UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JONATHAN WAYNE GOFORTH,

     Petitioner,

V.

WARDEN RANDY WHITE,

     Respondent.

Civil Action No. 5: 09-352-KKC

**OPINION AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In 2000, a Kentucky jury found Jonathan Wayne Goforth and his co-defendant Virginia Caudill guilty of the robbery and murder of Lonetta White. Both Goforth and Caudill were sentenced to death. In a petition for a writ of habeas corpus filed before this Court, Goforth alleges twenty-six errors of constitutional magnitude affecting his conviction and sentence. For the reasons that follow, Goforth's petition will be **DENIED**.

## I. FACTUAL BACKGROUND

The following factual description is primarily drawn from the Kentucky Supreme Court's opinion in Goforth's direct appeal. *See Caudill v. Commonwealth*, 120 S.W.3d 635 (Ky. 2003). During the early morning of March 15, 1998, a seventy-three year old African American woman Lonetta White was bludgeoned to death in her Lexington, Kentucky home. White's body was later found in the trunk of her car, which had been driven to a field several miles away and set on fire. White's home was also ransacked, and various items of her personal property including two guns, jewelry, and a mink coat were stolen. Both Jonathan Goforth and Virginia Caudill admitted they were present during the commission of the crimes against White. However, Goforth and Caudill each accused the other of carrying out the murder, robbery, and automobile burning.

Prior to the murder and accompanying crimes, Virginia Caudill was living with Steve White, the victim's son.  On March 13 or 14, the couple argued about Caudill's drug use, and Caudill moved out of Steve's residence.  Caudill then proceeded to visit a nearby drug house where she encountered Goforth, a casual acquaintance whom she allegedly had not seen in fifteen years. On the afternoon of March 14, Goforth drove Caudill to Lonetta White's home, where Caudill persuaded White to give her twenty or thirty dollars to rent a hotel room for the night.  However, instead of renting a hotel room, Caudill used the money to purchase cocaine.  Around 3:00 AM on March 15, Goforth and Caudill returned to Mrs. White's home in Goforth's pickup truck.

From here, the accounts of Goforth and Caudill diverge.  According to Caudill, Goforth was the one behind the killing and other crimes.  Caudill claims she went to White and requested more money for a hotel room rental while Goforth remained out of sight.  Then, when White went to retrieve the money, Goforth unexpectedly burst through the door and began attacking her.  White pleaded with Caudill for help, but Goforth took Caudill to a nearby bedroom and bound her hands together, rendering her helpless.  Goforth then killed White, ransacked the residence, loaded some of White's personal property into his pickup truck, and wrapped White's body in a carpet.  Goforth convinced Caudill to assist him in loading White's body into the trunk of her car.  The two then drove the car and Goforth's pickup truck to a vacant field, where Goforth doused White's car with gasoline and set it on fire.

According to Goforth, Caudill was the lead participant in the crimes.  At trial, Goforth testified that Caudill persuaded White to let them inside her home in the middle of the night by telling her that they were having car trouble and needed to borrow her telephone.  Once inside, Caudill asked for more money.  When White refused, Caudill became belligerent and began striking her in the back of the head with a hammer she had surreptitiously taken from Goforth's

pickup truck.  While Caudill continued to bludgeon White with the hammer, Goforth went into the living room, sat down on the sofa, and considered what to do next.  Caudill then proceeded to ransack White's house, load her property into the pickup truck, and wrap her body in a carpet.  At Caudill's request, Goforth helped Caudill load the body into the trunk of White's automobile.  The two then drove both vehicles to a vacant field, where Caudill was the one who doused White's car with gasoline and set it on fire.

Because of Caudill's known relationship with the victim's son Steve, Caudill was questioned by Lexington police on the evening of March 15.  Caudill denied any involvement in the murder but did share that she had been with Goforth the day prior.  The police then unsuccessfully attempted to contact Goforth at his home, resorting to leaving him a message asking that he get in touch with them.  Rather than doing so, Goforth left Fayette County, as did Caudill. Together, they fled to Mercer County, Kentucky; to Ocala, Florida; and then to Gulfport, Mississippi.  In Mississippi, the two separated.  Goforth remained in Gulfport, but Caudill moved to New Orleans, Louisiana, where she was eventually arrested around eight months after Lonetta White's death.  Upon her arrest, Caudill confessed that she was present at the time of the crimes but named Goforth as the primary perpetrator.  Goforth was arrested in Gulfport shortly thereafter, and he gave a statement to the police stating that Caudill and an unidentified African American male committed the murder.

Despite their antagonistic defenses, Goforth and Caudill were tried jointly by jury in February 2000.  Following the trial, both Goforth and Caudill were found guilty of murder, first-degree robbery, first-degree burglary, second-degree arson, and tampering with physical evidence. Both were sentenced to death.  Caudill's conviction and death sentence were affirmed on direct appeal in state court, *see Caudill*, 120 S.W.3d 635, and her attempts to seek federal habeas relief

3

were denied by both the United States District Court for the Eastern District of Kentucky and the

Sixth Circuit Court of Appeals.  *See Caudill v. Conover*, 881 F.3d 454 (6th Cir. 2018); *Caudill v.

Conover*, Civil No. 5:10-84-DCR, 2014 WL 349300, *1 (Jan. 31, 2014).  Goforth's conviction and

sentence were affirmed on direct appeal, *see Caudill*, 120 S.W.3d 635, and his requests for state

post-conviction relief were also denied.  *Goforth v. Commonwealth*, Case No. 2006-SC-000456-

MR, 2009 WL 1110400, at *1 (Ky. April 23, 2009).  Goforth now seeks federal habeas review.

## II.  STANDARD OF REVIEW

Because Goforth is a state prisoner seeking federal habeas relief, his claims are subject to

a variety of procedural rules.  As a preliminary matter, habeas petitioners must clear two hurdles

for each claim presented.  First, before bringing a claim to federal court, a petitioner must exhaust

all available opportunities to present the claim to the state court for consideration.  *See* 28 U.S.C.

§ 2254(b)(1)(A).  In general, "the exhaustion doctrine requires the petitioner to present the same

claim under the same theory to the state courts before raising it on federal habeas review." *Hodges

v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) (quoting *Hicks v. Straub*, 377 F.3d 539, 552-53 (6th

Cir. 2004)).  Second, the petitioner must comply with all state procedural rules when presenting

his federal claims to the state court for consideration.  Failure to do so results in "procedural

default" of the claim, in which case the claim may not be considered on federal habeas review

absent cause or prejudice.  *See, e.g.*, *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821,

826-32 (6th Cir. 2019).

In addition, because of when it was filed, Goforth's petition is governed by the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  Pursuant to

AEDPA, this Court may grant a state prisoner's habeas petition with respect to "any claim that

was adjudicated on the merits in State court proceedings" only if one of two limited circumstances

4

applies: (1) the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court," *see* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or (2) the state court's decision "was based on an unreasonable determination of the facts" in light of the record before it.  28 U.S.C. § 2254(d)(2); *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  A state court's decision is contrary to or involved an unreasonable application of clearly established federal law if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). And a state court's decision is based on an unreasonable determination of the facts only when it is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.  AEDPA imposes upon federal courts a highly deferential standard of review, demanding state court decisions be given the benefit of the doubt and only safeguarding against extreme malfunctions of the criminal justice system. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Chinn*, 24 F.4th at 1102.

## III.  ANALYSIS

Goforth's habeas petition sets forth twenty-six claims for relief.[1]  [R. 9.]  The Court will address these claims primarily in the chronological order in which Goforth presents them, grouping related claims when appropriate.  For the reasons that follow, none of the claims warrant habeas relief.

### A.  Claim 1—The Indictment

---

[1] Although the petition itself presents twenty-eight claims [*see* R. 9], two of the twenty-eight have since been withdrawn in full by post-conviction counsel.  [*See* R. 44.]

To begin, Goforth contends the indictment issued against him was defective because the murder charge alleged therein failed to specify a criminal mental state. Thus, he claims the Kentucky trial court lacked subject-matter jurisdiction to enter a conviction for murder and his Fourteenth Amendment due process rights were violated when the court did so. [R. 9 at 69-73.] On direct appeal, the Kentucky Supreme Court evaluated Goforth's indictment and found it sufficient to confer the appropriate jurisdiction. *Caudill*, 120 S.W.3d at 650. Now on habeas review, Goforth has not shown that this decision was contrary to or involved an unreasonable application of clearly established law.

The indictment in this matter listed Count 1 of five counts as "Murder, KRS 507.020, Capital Offense." [R. 8-2 at 1.] The indictment went on to allege that "On or about the 15th day of March, 1998, in Fayette County, Kentucky, the above named Defendants committed the offense of Capital Murder by causing the death of Lonetta White while in the course of committing a First Degree Robbery and a First Degree Burglary." [*Id.*] Goforth contends that Kentucky's murder statute codifies two distinct offenses—intentional murder, *see* KRS 507.020(1)(a), and wanton murder, *see* KRS 507.020(1)(b)—and that these two offenses are distinguished by their *mens rea* requirements. Goforth claims that because the indictment failed to specify which of the two subsections was at issue in his case, it failed to fairly inform him of "the nature of the charged crime" as well as "the specific offense with which he [was] charged"—two prerequisites of conferring subject-matter jurisdiction on the trial court. [R. 9 at 70, quoting *Thomas v. Commonwealth*, 931 S.W.2d 446, 449 (Ky. 1996).]

In response to these arguments, the Kentucky Supreme Court considered the requirements of Criminal Rule 6.10(2) and noted the rule "only requires that the indictment provide information sufficient to give the defendant notice of the charge against him/her and that an indictment is not

6

invalid merely because of factual incompleteness of lack of specificity." *Caudill*, 120 S.W.3d at 650 (citing *Thomas*, 931 S.W.2d at 449). Accordingly, the Kentucky Supreme Court found that the indictment, though perhaps lacking in specificity, was ultimately "not invalid and sufficed to confer subject matter jurisdiction on the Fayette Circuit Court with respect to the charged offenses." *Id.*

Upon review, Goforth has not explained why this federal court should disturb the Kentucky Supreme Court's interpretation of a question of state law—i.e., whether the indictment conferred adequate jurisdiction upon the state trial court. *See Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."). And, in any event, Goforth fails to demonstrate how the Kentucky Supreme Court's decision conflicts with United States Supreme Court precedent. To the contrary, "due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense . . . Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). There is no indication that Goforth was prejudiced in preparing his defense because the indictment did not specify one (or both) of the subparts of KRS 502.070 relevant to his proceedings. Instead, because the indictment "referenced the principal statutes for the *mens rea* requirement," Goforth was presumably able to "locate[] the statutes and determine[] the mental states required for the offenses with which he was charged." *Id.* at 536. Accordingly, Goforth is not entitled to habeas relief on this claim.

### B. Claim 2—Alleged *Brady* Violation

Second, Goforth contends the prosecution failed to disclose certain evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), thereby depriving him of a fair trial and sentencing. [R. 9 at 74-85.] The evidence in question is information the police obtained from Raymond Kirk, a Lexington attorney who was formerly involved with Virginia Caudill during her time as a prostitute. In December 2004, two investigators working on Goforth's post-conviction case interviewed Raymond Kirk and learned that he had contacted the Lexington Police Department to provide information about Caudill's reputation in response to a newspaper article about Lonetta White's murder. [*See* R. 8-18.] Kirk told these investigators (and claimed to have told the Lexington Police Department) that when he tried to end his ongoing relationship with Caudill she became violent, leading him to sue Caudill for damages and to seek a restraining order against her. [*Id.*] Kirk also suggested Caudill was a police informant who provided prostitution services to police officers, which led him to fear "the police would attempt to help her, thus allowing her to slide and pin all of this on Mr. Goforth." [*Id.* at 6.]

At trial, Goforth's defense theory was that Caudill was exacting violent revenge against Steve White after their breakup. Despite this, Goforth's attorneys were not provided with any information concerning Raymond Kirk or his communication with police prior to trial or sentencing. [R. 9 at 75.] Goforth claims this failure to disclose amounted to a *Brady* violation with respect to both guilt and sentencing. [*Id.* at 79.]

Pursuant to *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Accordingly, the United States Supreme Court has articulated three specific components of a *Brady* violation: "[1] the evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either wilfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Chinn*, 24 F.4th at 1102. Evidence is considered material if its admission would create a reasonable probability of a different result, such that its suppression is deemed to undermine confidence in the outcome of the trial. *Chinn*, 24 F.4th at 1102.

Although the parties debate the precise procedural posture of the *Brady* claim, the Court finds the Kentucky Supreme Court reached a holding on the merits with respect to Goforth's entire argument. After all, in its opinion denying post-conviction relief, the Kentucky Supreme Court addressed the credibility (or alleged lack thereof) of the Kirk affidavit and considered the evidence cumulative based on other character evidence introduced against Caudill. The court decided that Goforth suffered no prejudice from the absence of the Kirk affidavit, given the jury clearly rejected all other "attempts by defense counsel to portray Caudill as an innocent victim of manipulation." *See Goforth*, 2009 WL 1110400, at *9. Further, the Kentucky Supreme Court indicated the Kirk affidavit failed to exonerate Goforth "in any matter." *Id.*

Though Goforth takes issue with the Kentucky Supreme Court's failure to differentiate between the guilt and sentencing phases of his case [*see* R. 9 at 83], a state court's silence on a particular point does not amount to automatic *de novo* review by a federal habeas court. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99; *see also Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) ("This claim was rejected on the merits by the Kentucky Supreme Court (albeit without analysis) and therefore receives deferential review under the AEDPA standard."). Beyond the Kentucky Supreme Court's failure to specifically mention

sentencing, Goforth offers little to suggest the court did not consider the totality of his *Brady* claim on the merits. This Court thus assumes the "matter[s]" to which the Kentucky Supreme Court alluded were both the guilt phase and the sentencing phase of Goforth's proceedings. *See Goforth*, 2009 WL 1110400, at *9. Accordingly, the Court reviews the entirety of Goforth's *Brady* claim through the lens of AEDPA deference.

In light of AEDPA, which works "in tandem" with the *Brady* test, the question before the Court is "whether there is any Supreme Court precedent that would compel every fairminded jurist to hold that the State committed a *Brady* error here." *See Chinn*, 24 F.4th at 1106. Goforth has failed to supply this kind of precedent. Goforth recites the *Brady* standards and offers his opinion that the Kirk affidavit was exculpatory and material. [R. 9 at 75-79.] But in the end, this Court must consider the claim with significant latitude given to the Kentucky Supreme Court:

> When assessing whether a state court's application of federal law is unreasonable, the range of reasonable judgment can depend in part on the nature of the relevant rule that the state court must apply. As such, the more general the rule at issue— and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations. Just as in *Strickland*, the *Brady* materiality standard is a general one, and so the range of reasonable applications is substantial.

*Chinn*, 24 F.4th at 1105 (cleaned up). While Goforth may ultimately disagree with the Kentucky Supreme Court's conclusion, he has not demonstrated that every fair-minded judge would find that he was prejudiced by the exclusion of the Kirk affidavit. Accordingly, this claim for relief is denied.

### C. Claim 3—Alleged *Batson* Violation

Goforth next argues the prosecution exercised its peremptory challenges on the basis of race, thus violating his Fourteenth Amendment equal protection rights. [R. 9 at 86-120.] During jury selection, the prosecution exercised eight of its nine peremptory strikes against white men.

10

Defense counsel raised a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), which sets forth a three-part test to evaluate whether a peremptory strike violates the Equal Protection Clause.[2] The record in Goforth's case suggests that, at the time, neither the attorneys nor the trial judge were particularly convinced *Batson* even applied to the situation at hand—namely, to alleged discrimination against white males.  [*See* R. 140 at 13-15.]  Nevertheless, the trial court had the prosecution state its reasons for exercising the strikes on the record.  The court then declared the prosecutors' reasons to be race-neutral.  [*See id.*]

Considering the issue on direct appeal, the Kentucky Supreme Court held that the trial court's conclusion was not clearly erroneous.  *Caudill*, 120 S.W.3d at 657.  Goforth, however, still maintains his rights were violated because the trial court failed to make more specific findings or, in other words, to "undertake a searching analysis to determine if the prosecutor's purported race-neutral justifications were actually race-neutral."  [R. 9 at 86.]

The Sixth Circuit Court of Appeals has already evaluated this particular *Batson* challenge in the context of resolving Virginia Caudill's petition for a writ of habeas corpus.  *See Caudill*, 881 F.3d at 457-60.  Clarifying the *Batson* analysis, the Sixth Circuit stated as follows:

> The Supreme Court has never directed trial courts to make detailed findings or to solicit the defense attorney's views before ruling on a *Batson* motion.  *Batson* itself declined to formulate particular procedures to be followed beyond the three-step framework.  On reflection, that is not surprising.  Some *Batson* claims will be stronger than others.  And some claims thus will deserve more process or more consideration or more argument than others.  The amount of such deliberation will invariably turn on the circumstances of each case.

*Id.* at 459 (cleaned up).  Further, and particularly in the context of a habeas claim, the Sixth Circuit recognized that "[t]he more flexible a standard, as [*Batson*] surely is, the more difficult it will be

---

[2] First, a defendant bringing a *Batson* challenge must demonstrate a prima facie case of discrimination. Second, the prosecutor offers a non-discriminatory reason for the strike.  Third, the court will determine whether or not "the defendant has established purposeful discrimination."  *Batson*, 476 U.S. at 96-98.

to show an unreasonable violation of it." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  With respect to Caudill's habeas claim, the Sixth Circuit acknowledged that the trial court's evaluation of the *Batson* challenge was less than thorough.  Nevertheless, the Sixth Circuit considered the prosecution's reasons and the *voir dire* record on the whole and ultimately determined that no constitutional violation occurred.  *Id.* at 457-60.

While Goforth suggests the Sixth Circuit's determination in Caudill's case should not be dispositive of the *Batson* claim he raises in his own habeas petition, [*see* R. 160], this Court disagrees.  Goforth's petition plainly states that the key inquiry is whether the trial court complied with the *Batson* test, [*see* R. 9 at 94], and the Sixth Circuit already found the Kentucky Supreme Court did not unreasonably apply the law on that point.  Goforth has given this Court no reason to conclude otherwise.  In turn, the Court has no reason to find that Goforth is entitled to a new trial, or to a *Batson* evidentiary hearing, based on this claim.

### D.  Claims 4 and 5—Jurors #871 and #884

In Claims 4 and 5, Goforth suggests his Sixth, Eighth, and Fourteenth Amendment rights to an impartial jury were violated when the trial court failed to excuse Jurors #871 and #884 for cause.  [R. 9 at 121-139.]  During *voir dire*, Juror #871 suggested he would have a difficult time imposing a minimum penalty for a murder where an aggravating circumstance was involved.  [R. 132 at 7-8.]  However, Juror #871 also stated that he had no preconceived notions about the case, that he would not automatically impose any punishment regardless of the facts, and that he would "rather hear all the facts" before making any decisions.  [*Id.* at 1-2, 7.]  Juror #884 stated she was "for the death penalty" and that she believed "our country has gotten out of hand and that we don't always give enough punishment to the crimes."  [R. 134 at 4.]  However, Juror #884 also stated that she could consider the full range of penalties and base her ultimate decision on the facts of the

case.  [*Id.* at 5-6.]  Defense counsel sought to strike both jurors for cause, but the trial judge denied those requests.  Goforth then chose to exercise peremptory strikes against both prospective jurors, so neither sat on the final panel.

When the Kentucky Supreme Court considered this matter on direct appeal, it found the trial judge did not abuse its discretion in denying the motions to strike.  In its evaluation, the court considered the death qualification questions asked by the trial judge and concluded the trial judge "did not misstate the law or mislead the jury."  *Caudill*, 120 S.W.3d at 655.  The court also considered the statements given by Jurors #871 and #884 and noted that "[a] per se disqualification is not required merely because a juror does not instantly embrace every legal concept presented during *voir dire* examination."  *Id.* at 656 (quoting *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994)).  Further, the Kentucky Supreme Court recognized the United States Supreme Court's standards for an impartial capital jury, *see id.* at 654-55, and acknowledged federal precedent indicating a trial judge is typically best situated to determine a particular juror's impartiality.  *Id.* at 656.

While Goforth clearly takes issue with the way the Kentucky Supreme Court interpreted the trial court's death qualification process, as well as how both state courts weighed the statements of the two jurors, Goforth has not demonstrated how the Kentucky Supreme Court's decision departs from clearly established federal law.  Under AEDPA, what matters is neither Goforth's nor this Court's independent judgment but rather whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the Kentucky Supreme Court's evaluation of the issue. *Woods v. Etherton*, 578 U.S. 113, 118 (2016).

Furthermore, Goforth ultimately chose to exercise peremptory strikes against Jurors #871 and #884 so neither sat on the final panel.  And Goforth has not argued that any of the jurors who

did sit on his final panel were biased.  *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (noting the key constitutional issue is whether the final jury is impartial); *see also Rivera v. Illinois*, 556 U.S. 148, 152 (2009) (explaining that a petitioner's right to exercise peremptory challenges in state court is a matter of state law and that, even if states withhold peremptory challenges altogether, a petitioner's federal constitutional rights to an impartial jury and fair trial are not impacted).  For all of these reasons, Claims 4 and 5 are properly denied.

### E.  Claim 6—*Voir Dire* Regarding Aggravating Circumstances

Relatedly, Goforth contends his constitutional rights were violated because the trial judge did not allow adequate *voir dire* regarding whether jurors could impose a sentence less than death for murder plus an aggravating circumstance.  [R. 9 at 140-148.]  In his articulation of this claim, Goforth again complains at length about the trial court's failure to strike Jurors #871 and #884. However, Goforth's primary Claim 6 argument seems to be that the trial court did not allow him sufficient opportunity to question jurors about their views on the impact of potential aggravating circumstances in his case.  According to Goforth,

> Because detailed *voir dire* questioning usually elicits answers that may form a basis for a challenge for cause, a trial court's refusal to allow counsel to ask questions designed to determine whether a potential juror could consider imposing less than death under the circumstances of the case undermines the Sixth Amendment guarantee of a trial by an impartial jury.

[*Id.* at 144.]

There are several problems with this claim.  First, as mentioned above, the Kentucky Supreme Court found that the trial court appropriately death qualified the jurors, *see Caudill*, 120 S.W.3d at 653-56, and Goforth fails to demonstrate this was an unreasonable finding.  Second, Goforth still has not claimed that any of the jurors on his final panel were actually biased so as to trigger an error of constitutional magnitude.  Finally, to the extent Goforth feels he was not allowed

14

to appropriately question the jurors who did sit on the final panel, Goforth has provided no case, much less a United States Supreme Court case, suggesting a constitutional right to ask the particular questions he wished to ask.

In the end, the Kentucky Supreme Court did not find Goforth's case to be one involving a lack of adequate *voir dire*. *See, e.g., Morgan v. Illinois*, 504 U.S. 719, 729-35 (1992). And Goforth fails to demonstrate that no fairminded jurist could agree with the Kentucky Supreme Court's conclusion. Accordingly, Claim 6 affords Goforth no relief.

### F. Claims 8, 15, and 23—Combination Murder Instruction

Goforth also brings three claims related to the so-called "combination murder" jury instruction given in his case. The trial court provided the jury with three different instructions under which it could find Goforth guilty of murder. First, consistent with Kentucky's murder statute, KRS 507.020, the court gave an instruction under which the jury could find Goforth guilty of murder as the principal actor. [R. 8-4.] Second, consistent with Kentucky's complicity statute, KRS 502.020, the court gave an instruction under which the jury could find Goforth guilty of murder as an accomplice. [R. 8-5.] Third, and over Goforth's objection, the court gave an instruction under which the jury could find Goforth guilty of murder for being either the principal actor or an accomplice:

<u>INSTRUCTION NO. 4</u>
<u>MURDER – PRINCIPAL OR ACCOMPLICE</u>
<u>COUNT 1</u>

If you believe from the evidence beyond a reasonable doubt that the Defendant, Jonathon Wayne Goforth, is guilty of either Murder under Instruction No. 2 or Complicity to Murder under Instruction No. 3, but are unable to determine from the evidence whether the Defendant committed this crime as Principal under Instruction No. 2 or Accomplice under Instruction No. 3, then you will find Jonathon Wayne Goforth guilty of Murder, Principal or Accomplice, under this Instruction and so state in your verdict.

> If you find the Defendant guilty under this Instruction, you will not fix his punishment but shall indicate in your verdict only that you have found him guilty of this offense and return the verdict to the Court without deliberating on the question of punishment.

[R. 8-6.]  The jury returned its guilty verdict against Goforth under this combination instruction. [R. 8-8.]

According to Goforth, the use of the combination murder instruction resulted in an ambiguous verdict that violated his constitutional rights in a number of ways.  Due to this ambiguity, Goforth claims the trial court lacked authority to enter his conviction for murder [*see* R. 9 at 156-66] and that his corresponding death sentence also violates the Eighth and Fourteenth Amendments.  [*Id.* at 236-39.]  Finally, Goforth claims the ambiguity created by the instruction prevents this Court from undertaking an appropriate review of his death sentence.  [*Id.* at 314-18.]

The crux of Goforth's argument underlying all three of these claims is the same:  Goforth insists the combination instruction allowed the jury to find him guilty of murder without finding him guilty of each necessary element of the offense—specifically, the *actus reus* required for murder—in violation of Supreme Court precedent and basic principles of criminal law.  *See, e.g., Middleton v. McNeil*, 541 U.S. 433, 437 (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.").  Goforth contends this is so because the combination instruction explicitly allowed the jury to return a guilty verdict even if it was "unable to determine" what it was that Goforth did. [*See* R. 9 at 162.]

The parties dispute the standard of review the Court should apply when evaluating these three claims.  But even if this Court were to consider the matter *de novo*, the Court would conclude the combination instruction passes constitutional muster.  According to Goforth, the fact that the jury was allowed to find him guilty of murder even though it was "unable to determine" if he was

16

a principal or an accomplice means the jury failed to find the required *actus reus* elements of murder. But this reasoning overlooks the fact that the jury had a fourth option in addition to the principal, accomplice, and combination murder instructions given at trial: acquitting Goforth altogether. If the jury did not believe Goforth committed the *actus reus* elements necessary for a murder conviction under either the principal or accomplice instruction, it could have returned a not guilty verdict. Instead, the guilty verdict returned under the combination instruction reflects the jury's view that Goforth *did* commit the requisite *actus reus* elements under either the principal or the accomplice instruction. Put another way, the jury was convinced beyond a reasonable doubt that Goforth was either a principal or an accomplice to White's murder. It simply was unable to unanimously agree upon which of the two roles Goforth played.

The trial court's use of the combination murder instruction for Goforth and Caudill is consistent with the instruction's use in other cases. *See, e.g., Halverson v. Simpson*, Case No. 08-484-DLB, 2014 WL 5419373, at *38 (E.D. Ky. Oct. 22, 2014) ("[B]ecause there was no direct evidence in this case whether Halverson or Willoughby discharged the fatal shot, it was proper for the court to give a combination principal-accomplice instruction."); *Roach v. White,* Case No. 3:16-300-DJH, 2022 WL 3716042, at *9-10 (W.D. Ky. Aug. 29, 2022) (comparing cases). In these similar cases, the combination instruction was deemed appropriate on federal review where the trial evidence supported a conviction under either the principal or accomplice theory. Here, Goforth makes no argument regarding the sufficiency of the evidence, and the record clearly supports a conviction under either theory. Further, Goforth has identified no legal authority from the Sixth Circuit Court of Appeals, let alone the United States Supreme Court, that undermines the reasoning of these district court decisions.

Although some ambiguity will always be inherent in a jury verdict under a combination principal-accomplice murder instruction, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton*, 541 U.S. at 437. While the jury was unable to pinpoint Goforth's exact role in White's death, it nevertheless found Goforth guilty of the *actus reus* required for a murder conviction under either KRS 507.020 or KRS 502.020. *See Bowling v. House*, Case No. 10-174-ART, 2011 WL 4072886, at *8 (E.D. Ky. July 26, 2011) (finding that a jury using the combination instruction "unquestionably convicted [the defendant] of murder" even if it "remains unclear on which theory the conviction was based"). Consequently, neither Goforth's conviction nor his death sentence are unconstitutionally ambiguous, and this Court is able to appropriately review the matter. All three of Goforth's claims related to the combination murder instruction are therefore properly denied.

### G.  Claim 9—Criminal Facilitation Instruction

At trial, Goforth's jury was instructed on complicity but not on the lesser included, non-capital offense of criminal facilitation. Though Goforth requested a criminal facilitation instruction, the trial court did not believe there were facts sufficient to justify it and thus refused to give it. Goforth challenged the trial court's decision on direct appeal, but the Kentucky Supreme Court found no error. *See Caudill*, 120 S.W.3d at 670. Goforth now raises the matter before this Court. [R. 9 at 167-77.]

In its evaluation of the claim, the Kentucky Supreme Court noted that, under Kentucky law, facilitation reflects the mental state of someone who is "wholly indifferent" to the completion of the crime as opposed to someone who intends the crime to be committed. *Caudill*, 120 S.W.3d at 670. In turn, the court provided various reasons that no reasonable juror could believe Goforth was wholly indifferent to the crimes committed against Lonetta White. *Id.* While the Kentucky

Supreme Court did not explicitly cite *Thompkins v. Commonwealth*, 54 S.W.3d 147 (Ky. 2001),

its analysis in Goforth's case squares with that prior explanation of Kentucky state law:

> An instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.
>
> . . .
>
> The duty to instruct on any lesser included offenses supported by the evidence does not require an instruction on a theory with no evidentiary foundation. The jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios.

*Thompkins*, 54 S.W.3d at 151 (cleaned up). Consistent with *Thompkins*, the Kentucky Supreme

Court considered the evidence presented and decided that, as a matter of state law, the jury could

not have believed beyond a reasonable doubt that Goforth was guilty of criminal facilitation.

As Goforth points out, under the United States Supreme Court's decision in *Beck v.*

*Alabama*, a death sentence should not be imposed "when the jury was not permitted to consider a

verdict of guilt of a lesser included non-capital offense, and when the evidence would have

supported such a verdict." 447 U.S. 625, 627 (1980). But Goforth fails to explain how the

Kentucky Supreme Court's decision, which specifically found the evidence would *not* have

supported a criminal facilitation verdict in Goforth's case, violated *Beck* or other federal

precedent.[3] This Court is therefore unable to conclude the Kentucky Supreme Court's decision

was contrary to or involved an unreasonable application of clearly established law, and the claim

will be denied.

---

[3] That the Kentucky Supreme Court failed to specifically cite *Beck* or other federal case law is immaterial. *Contrast* R. 9 at 175 (complaining the state court failed to mention *Beck* or any federal constitutional rights) *with Pinholster*, 563 U.S. at 188-88 (noting Section 2254(d) applies even to summary denials and explaining that, in such situations, federal habeas courts should first determine what arguments could have supported the state decision and then consider whether fairminded jurists could disagree that those arguments are inconsistent with a prior Supreme Court decision).

### H.  Claim 11—Trial Counsel's Failure to Move to Sever During the Guilt Phase

Goforth and Caudill were tried jointly despite Caudill's motion to sever the case.  *See*

*Caudill*, 120 S.W.3d at 651.  In his state post-conviction proceedings, Goforth argued his trial

counsel was ineffective for failing to join Caudill's motion or to otherwise seek a severance of the

trial's guilt phase.[4]  *Goforth*, 2009 WL 1110400, at *8.  Goforth now raises the same argument

before this Court.  [R. 9 at 185-203.]

Pursuant to the Sixth Amendment, criminal defendants enjoy the right to the effective

assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to

establish a violation of that right, a petitioner must demonstrate two things.  First, he must show

that his attorney's performance was deficient, meaning that "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  Second,

he must show that his attorney's deficient performance prejudiced his defense, meaning "that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.

That said, the Kentucky Supreme Court already applied the *Strickland* framework to

Goforth's ineffective assistance claim regarding severance.  *Goforth*, 2009 WL 1110400, at *1, 8.

Under AEDPA, federal courts ask only whether the state court reasonably applied *Strickland*'s

already-deferential inquiry, giving "double deference to the state court's determination." *Hodge*

*v. Jordan*, 12 F.4th 640, 643 (6th Cir. 2021) (citing *Harrington*, 562 U.S. at 105).  In order to

succeed on his claim, then, Goforth must show that the Kentucky Supreme Court either

unreasonably applied *Strickland* to his claim or based its decision on an unreasonable

determination of the facts.  Goforth has failed to carry this burden.

---

[4] Goforth also maintains he was prejudiced by the joint sentencing phase [*see* R. 9 at 239-49], but that claim
will be addressed separately below.

In his petition Goforth attempts to justify severance for a number of reasons, the first being his and Caudill's antagonistic defenses.  [R. 9 at 185-94.]  In addition, Goforth contends he was prejudiced by certain evidence that was admissible in the joint trial but that likely would be inadmissible against him separately.  According to Goforth, this evidence included the content of several prior statements Caudill made to jailhouse informants while she was incarcerated, as well as Caudill's testimony itself.  [*See id.* at 194-95.]  Finally, Goforth suggests his motion to sever would have been more persuasive than Caudill's, so it would have been unreasonable for the trial court to deny his motion even if it failed to grant Caudill's.  [*Id.* at 201.]

Federal habeas courts "first look to Kentucky law to determine whether a motion to sever should have been granted."  *Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004).  Here, the Kentucky courts considering the matter consistently held that trying Caudill and Goforth together was not prejudicial.  Regarding the "credibility contest between Caudill and Goforth" [*see* R. 9 at 187], the Kentucky Supreme Court evaluating joinder on direct appeal explained that the antagonistic defenses actually supported, rather than discouraged, joinder in the case:

> That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than against a joint trial.  If one is lying, it is easier for the truth to be determined if all are required to be tried together.

*Caudill*, 120 S.W.3d at 651 (quoting *Ware v. Commonwealth*, 537 S.W.2d 174, 177 (Ky. 1976)).

Next, although the Kentucky Supreme Court never specifically addressed the prejudicial evidence issue, during post-conviction proceedings the court did find that it would have been reasonable for Goforth's counsel to make a tactical decision to allow the co-defendants' cases to proceed jointly despite the various challenges joinder might present.  As the court articulated, because "Goforth's primary defense was to paint Caudill as the sole mastermind of the crimes, it was likely deemed more effective to allow the jury to hear the Commonwealth's case against

21

Caudill, rather than attempt to place blame on an absent co-defendant." *Goforth*, 2009 WL 1110400, at *8. Further, this Court notes that of the "several jailhouse snitches" Goforth mentions in his habeas petition, [*see* R. 9 at 194], only one was actually allowed to testify regarding Caudill's jailhouse statements about Goforth.[5] And while there were no limiting instructions given by the trial court (or requested), Goforth was given the opportunity to rigorously cross-examine this witness at trial. [R. 144 at 8-12.] Goforth also extensively cross-examined Caudill herself about the informants and their testimony. [R. 143 at 67-79.]

Finally, Goforth's claim that his motion to sever would have been granted even if Caudill's was denied is purely speculative, and Goforth has not adequately explained how or why it was unreasonable for the Kentucky Supreme Court to find that a second motion to sever would have been inconsequential. *See, e.g., Bowling v. Commonwealth*, 80 S.W.3d 405, 415 (Ky. 2002) ("It is not ineffective assistance of counsel to fail to perform a futile act."). Ultimately, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. In light of the double deference afforded the state court's decision, Goforth is not now entitled to federal relief.

## I. Claim 12—Prosecutorial Misconduct During Guilt Phase

Next, Goforth contends his due process rights were violated because of improper prosecutorial comments made during the closing argument of his trial. [R. 9 at 204-12.] Specifically, Goforth claims the prosecutor inappropriately expressed his personal opinion about

---

[5] While incarcerated, Caudill made several statements about White's death to two jailhouse informants, Cynthia Ellis and Julia Davis. Both Ellis and Davis were called as witnesses in the prosecution's case-in-chief, and both were cautioned not to testify about Caudill's statements regarding Goforth. [*See* R. 142 at 223, 245-46.] Later, after Caudill took the witness stand herself, the prosecution recalled Cynthia Ellis as part of its rebuttal case. At that point, Ellis's testimony about what Caudill told her about Goforth was deemed admissible. [R. 144 at 3-12.]

the heinousness of the crime and also made comments shifting the burden of proof to Goforth. [*Id.*]

During his closing argument, the prosecutor stated "I really can't describe how savage and cruel this crime really was.  As many times as I have stood here before jurors and in murder cases and, and, I, I don't have the words."  [*Id.* at 204; *see also* R. 144 at 137.]  Later, the prosecutor asked the jury "What thing did either one of them do or show us or demonstrate to us that says they're not guilty of this offense?"  [R. 9 at 204; R. 144 at 149.]  Goforth made no objection to these statements during trial, but he did challenge the statements on direct appeal.  In response, the Kentucky Supreme Court found as follows:

> Contrary to appellants' assertion, the prosecutor did not tell the jury during guilt phase closing argument that this was the worst crime he had ever seen.  He told them, "As many times as I have stood here before jurors and in murder cases and I don't have the words."  That statement did not interject extrajudicial information into the trial.  In *Tamme, supra*, we held that the prosecutor's characterization of the case as the "worst imaginable crime" was but a statement of opinion of the prosecutor's view of the evidence.  973 S.W.2d at 39.
>
> . . .
>
> The prosecutor's guilt phase argument that neither defendant did, showed, or demonstrated anything "that says they're not guilty of this offense" was fair comment on the quality of the evidence for the defense.  *Tamme*, 973 S.W.2d at 38; *Bowling*, 873 S.W.2d at 178; *Haynes v. Commonwealth*, Ky., 657 S.W.2d 948, 952-53 (1983).

*Caudill*, 120 S.W.3d at 675-76.  Now, on federal habeas review, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process."  *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005) (cleaned up).

To answer this question, Goforth must demonstrate that the prosecutor's conduct was "both improper and so flagrant as to warrant reversal."  *Id.* at 641.  If a court does find improper conduct, it must then consider four factors to determine whether the conduct was also flagrant:  (1) the

23

likelihood that the remarks tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were made deliberately or accidentally; and (4) the total strength of the evidence against the defendant. *Id.* Notably, under AEDPA, the Court must give deference to the Kentucky Supreme Court's analysis of Goforth's prosecutorial misconduct claims. *Id.*

After reviewing the prosecutor's remarks, the relevant case law, and the Kentucky Supreme Court's decision, the Court finds that Goforth has failed to demonstrate that a deprivation of his due process rights occurred. While the prosecutor's first statement regarding the severity of the crime was strongly worded, this is not a comment that "so infected the trial with unfairness as to make the conviction a denial of due process." *Id.* at 640-41. Further, the prosecutor's question about what Goforth and Caudill did or did not demonstrate to the jury was not inappropriate when viewed in context. The prosecutor was not unequivocally shifting the burden of proof onto the defendants; instead, the Kentucky Supreme Court interpreted the prosecutor's remarks as a comparison of the quality of the defendants' evidence to that presented by the Commonwealth. This was not an unreasonable interpretation. Finally, even if any of the prosecutor's remarks were improper, Goforth has failed to show that the remarks were so flagrant that they deprived him of a due process right when also considering the context of the entire trial, the evidence presented, and the likelihood the remarks actually misled the jury or caused him prejudice. Accordingly, Claim 12 is denied.

## J. Claims 13 and 14—Ineffective Assistance of Counsel for Failure to Properly Investigate Caudill's Background and Present Reverse KRE 404(b) Evidence

Goforth next contends his trial counsel failed to properly investigate co-defendant Virginia Caudill's civil and criminal background. First, Goforth argues that if counsel had properly investigated Caudill's prior civil lawsuits, they would have easily learned about Raymond Kirk

24

and his allegations that Caudill threatened him, stalked him, and broke into his apartment after he broke up with her. In turn, counsel could have introduced that evidence to support the theory that Caudill murdered White as an act of revenge against her son Steve. [*See* R. 9 at 213-24.] Second, Goforth claims that if counsel had properly investigated Caudill's criminal history, they would have discovered a theft she committed in New Orleans that was similar to that committed against White. In turn, counsel could have introduced the New Orleans theft as "reverse 404(b)" evidence to argue Caudill had a *modus operandi* of robbing elderly black women. [*See* R. 9 at 225-35.]

As discussed above in the Court's analysis of Claim 11, a petitioner must demonstrate two things to establish a violation of the right to effective assistance of counsel: first, that his attorney's performance was deficient and, second, that said deficient performance prejudiced his criminal defense. *Strickland*, 466 U.S. at 686, 694. Further, in the context of a federal habeas petition governed by AEDPA, federal courts give "double deference to the state court's determination" where the state court has already applied *Strickland* to the petitioner's claims. *Hodge v. Jordan*, 12 F.4th at 643. In such situations, the question before the federal court is merely whether the Kentucky Supreme Court either unreasonably applied *Strickland* or based its decision on an unreasonable determination of the facts. *Id.*

In this case, the Kentucky Supreme Court did consider Goforth's ineffective assistance claims in its opinion denying post-conviction relief. *See Goforth*, 2009 WL 1110400, at *3. Nevertheless, Goforth seeks relief from this Court. To argue deficient performance, Goforth contends trial counsel's obligation to investigate the case included "investigating the criminal and civil record of a co-defendant" as well as "the basic step of searching the criminal and civil actions in the county where the crime took place to see what other lawsuits the co-defendant had been involved in and, from that, learn of individuals who may be able to provide valuable information

25

that could become the basis of a defense or support the defense counsel had decided to present at trial." [R. 9 at 219.] But while performing this kind of investigation may be wise on the part of defense counsel, Goforth points to no case law mandating this specific method of investigation, and the cases he highlights involve more extreme failures on counsel's part, such as the failure to interview known eyewitnesses to an alleged crime. *See, e.g., Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. 2007).

In any event, the Kentucky Supreme Court found that even if counsel were deficient for failing to investigate Caudill's civil and/or criminal history, there was still no prejudice warranting relief under *Strickland*. *See Goforth*, 2009 WL 1110400, at *3. And Goforth has not demonstrated the Kentucky Supreme Court's finding of no prejudice was based on an unreasonable interpretation of *Strickland* or an unreasonable application of the facts of the case. Instead, the Kentucky court's decision squares with the Sixth Circuit Court of Appeals' analysis in a comparable case, *Cauthern v. Colson*, 736 F.3d 465 (6th Cir. 2013). There, a capital habeas petitioner claimed that trial counsel failed to adequately investigate the co-defendant's background. Upon review, the Sixth Circuit found there was no ineffective assistance of counsel where, first, it was unclear that a reasonable investigation would have even turned up the evidence cited by the petitioner and, second, the evidence would have been inadmissible before the trial court. *Cauthern*, 736 F.3d at 487-88.

In Goforth's case, the Kentucky Supreme Court found that, as a matter of state law, the evidence would have been inadmissible at trial and that, in light of the other evidence presented, there was little question about the ultimate outcome of the case even if the evidence in question had been admitted. *See Goforth*, 2009 WL 1110400, at *3. Taking precedent like *Cauthern* and AEDPA's double deference into account, there is no basis for this Court to conclude that the

26

Kentucky Supreme Court's conclusions were unreasonable.  Both Claims 13 and 14 will therefore be denied.

### K.  Claim 16—Joint Sentencing Phase

Goforth also asserts that his Eighth Amendment and federal due process rights were violated because his case was not severed from Caudill's at the sentencing phase.  [*See* R. 9 at 239-49.]  Beyond their antagonistic defenses at trial, Goforth claims the antagonistic posture between him and Caudill worsened during sentencing so much so that he was denied a fair and reliable sentencing.  [*Id.*]  Specifically, Goforth claims he was prejudiced by evidence admitted regarding Caudill's submissive personality from which the jury could only infer that he was the "mastermind who not only killed White, but dominated [Caudill], as well."  [R. 9 at 239.]

Though Goforth did not move the trial court for severance of the sentencing proceedings, he did raise the issue before the Kentucky Supreme Court on direct appeal, arguing the trial court should have *sua sponte* severed the sentencing because the mitigation evidence Caudill presented unfairly prejudiced him.  The Kentucky Supreme Court denied this claim.  *See Caudill*, 120 S.W.3d at 670.

In its opinion, the Kentucky Supreme Court explained that Caudill never introduced mitigation evidence specifically targeting Goforth.  *See id.*  Instead, Caudill introduced evidence that she was abused by other men, not including Goforth, in support of the duress and domination mitigator.  The court noted that Caudill's evidence contrasted with that presented in *Foster v. Commonwealth*, 827 S.W.2d 670 (Ky. 1991), wherein the Kentucky Supreme Court required separate sentencing determinations for two co-defendants.  In that case, Foster's co-defendant Powell introduced extensive mitigation evidence of specific prior acts of violence and other misconduct committed against her by Foster herself.  For instance, Powell testified that she had

been beaten by Foster and introduced expert testimony that she suffered from battered spouse syndrome specifically because of Foster.  As a result, the court found that Powell's cumulative mitigation evidence ultimately deprived Foster of a fair sentencing.  *See Foster*, 827 S.W.2d at 679-83.

In Caudill and Goforth's case, the Kentucky Supreme Court concluded that the evidence presented in *Foster* was significantly more prejudicial than what Caudill presented in her mitigation case.  *Caudill*, 120 S.W.3d at 670.  The court also pointed out that when Caudill testified during the guilt phase of the trial, she never claimed that she was dominated by Goforth.  The jury would have heard—and presumably remembered—that testimony.  Further, the court noted that Goforth failed to cross-examine both Caudill's psychologist and the Commonwealth's rebuttal expert, suggesting the evidence in question was not actually as prejudicial as Goforth later claimed.  *See id*.

In light of the state court's review of the matter, this Court may once again grant relief only if the ruling involved an unreasonable application of clearly established federal law or if it was based on an unreasonable determination of the facts.  *See, e.g.*, 28 U.S.C. § 2254(d).  Goforth fails to clear this deferential hurdle.  As explained above, the Kentucky Supreme Court evaluated Goforth's case in light of the leading state case on the matter, ultimately finding Goforth's case to be distinct from *Foster* in a number of ways.  Goforth has offered no United States Supreme Court law suggesting the Kentucky court's analysis was flawed, perhaps because federal precedent undercuts rather than supports his arguments.

In *Kansas v. Carr*, 577 U.S. 108 (2016), the United States Supreme Court reversed the Kansas Supreme Court for finding a joint capital sentencing proceeding to be inappropriate.  According to the Supreme Court, concerns about evidence admitted in joint sentencing

proceedings fall within the purview of the Fourteenth Amendment Due Process Clause, not the

Eighth Amendment.  In turn, the relevant question is whether the evidence at issue "so infected

the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a

denial of due process."  *Carr*, 577 U.S. at 123-24 (quoting *Romano v. Oklahoma*, 512 U.S. 1, 12

(1994)).  The Supreme Court went on to explain the difficulty of meeting that threshold and noted

the default preference for joint proceedings:

> Joint proceedings are not only permissible but are often preferable when the joined
> defendants' criminal conduct arises out of a single chain of events.  Joint trial may
> enable a jury to arrive more reliably at its conclusions regarding the guilt or
> innocence of a particular defendant and to assign fairly the respective
> responsibilities of each defendant in the sentencing.  That the codefendants might
> have antagonistic theories of mitigation does not suffice to overcome [a state's]
> interest in promoting the reliability and consistency of its judicial process. . . . To
> forbid joinder in capital-sentencing proceedings would, perversely, increase the
> odds of wanton and freakish imposition of death sentences.  Better that two
> defendants who have together committed the same crimes be placed side-by-side
> to have their fates determined by a single jury.

*Id.* at 125 (cleaned up).

Goforth goes to great lengths to claim that "Caudill's entire mitigation case" would have

been inadmissible in a severed sentencing proceeding.  [*See* R. 9 at 239-40, 246.]  But even if that

were true, "[t]he mere admission of evidence that might not otherwise have been admitted in a

severed proceeding does not demand the automatic vacatur of a death sentence."  *Carr*, 577 U.S.

at 124.  And while there was no instruction specifically cautioning the jury against applying

Caudill's mitigating evidence to Goforth's sentencing determination [*see* R. 9 at 246-47], Goforth

has not presented a case mandating such an instruction.  All in all, Goforth has not provided this

Court with a basis to conclude that no fairminded jurist could disagree with the Kentucky Supreme

Court's decision, and thus he once again fails to overcome the deference due the state ruling.

### L.  Claim 17—Sentencing Phase Jury Instructions

Goforth contends the jury instructions given during his sentencing violated his Eighth Amendment and federal due process rights. According to Goforth, the instructions likely led the jury to believe that it must find mitigating circumstances unanimously before any individual juror could take them into account. [R. 9 at 250-60.] In response to this argument on direct appeal, the Kentucky Supreme Court found no error and explained that "[t]here is no requirement that a capital penalty jury be instructed that its findings on mitigation need not be unanimous." *Caudill*, 120 S.W.3d at 674.[6] Nevertheless, Goforth indicates the instructions given to his jury violated the United States Supreme Court's guidance in *Mills v. Maryland*, 486 U.S. 367 (1988), whereby it is unconstitutional for a state to require jurors to agree unanimously on the existence of a mitigating circumstance.

This Court's review of the record indicates the jury instructions in Goforth's case are less like those the Supreme Court rejected in *Mills* and more like instructions the high court actually upheld in *Smith v. Spisak*, 558 U.S. 139 (2010). Goforth's jury was generally instructed to "consider such mitigating or extenuating facts and circumstances as have been presented to you in the evidence and you believe to be true." [R. 8-11.] Further, the jury was specifically told to consider the aggravating circumstances "which you may believe from the evidence beyond a reasonable doubt." [R. 8-10.] Finally, the jury was instructed that its final verdict must be unanimous, and the verdict form asked the jury to list, in writing, any aggravating circumstances that it found beyond a reasonable doubt, with no such written counterpart required for mitigating circumstances. [R. 8-13.]

---

[6] Although the Kentucky Supreme Court did not explicitly refer to the federal case Goforth relies upon, *Mills v. Maryland*, 486 U.S. 367 (1988), the court did rely upon a previous Kentucky decision discussing *Mills* at length. *See Caudill*, 120 S.W.3d at 674 (citing *Bowling v. Commonwealth*, 873 S.W.2d 175 (Ky. 1993)). Contrary to Goforth's contention [*see* R. 9 at 258], this indicates the state court did reach the merits in rejecting his claim. This Court thus applies AEDPA deference.

Like in a similar case considered by the Sixth Circuit, "[n]either the instructions nor the forms said anything about how—or even whether—the jury should make individual determinations that each particular mitigating circumstance existed." *Thompson v. Parker*, 867 F.3d 641, 650 (6th Cir. 2017). The jury was required to find and specify any aggravating factors beyond a reasonable doubt on a unanimous verdict form, but like in *Spisak* (and unlike *Mills*), nothing required the jury to make a formal determination about the presence or absence of mitigators at all. *Id.* at 651-52. Accordingly, there is no reason to believe that a reasonable jury might have interpreted Goforth's jury instructions in a constitutionally impermissible manner. *See Coe v. Bell*, 161 F.3d 320, 337 (6th Cir. 1998); *see also Haight v. Jordan*, __ F. 4th __, 2023 WL 1859893, at *1, 22-23 (6th Cir. Feb. 9, 2023). In turn, the Court concludes the Kentucky Supreme Court's finding on this point was neither contrary to nor an unreasonable application of clearly established federal law as determined in *Mills*. fClaim 17 is therefore properly denied.

### M.  Claims 18, 19, and 20—Prosecutorial Misconduct During Sentencing Phase

Next, Goforth brings three claims all related to comments the prosecutor made during closing argument of the sentencing phase. Goforth claims the prosecutor's comments were inappropriate and violated both his due process (Claim 18) and Eighth Amendment (Claim 19) rights. [R. 9 at 260-76.] Goforth also raises an ineffective assistance of counsel claim for his attorneys' failure to object to the allegedly improper comments (Claim 20). [*Id.* at 276-77.]

Regarding Claim 18, the relevant question is whether the alleged prosecutorial misconduct amounted to a denial of due process of law. *See Bates*, 402 F.3d at 640-41. The Court previously explained the test for prosecutorial misconduct in response to Goforth's claim about improper comments made during closing arguments of the guilt phase: in the habeas context, Goforth must demonstrate that the prosecutor's conduct was "both improper and so flagrant as to warrant

reversal." *Id.* at 641.  That said, the Court's analysis with respect to this claim differs slightly from that employed previously in the context of the guilt phase:

> In the context of a death penalty sentencing hearing, however, the question of error or effect is more complex than in traditional trials.  Rather than determining whether a constitutional error would have pushed a jury from a 'not guilty' verdict to a 'guilty' verdict, we must attempt to discover whether the constitutional error influenced the jury's decision between life and death.

*Id.*

With respect to Claim 19, the relevant question is whether the prosecutor's actions were "so egregious that they effectively foreclose the jury's consideration of mitigating evidence" such that the jury is "unable to make a fair, individualized [sentencing] determination as required by the Eighth Amendment." *DePew v. Anderson*, 311 F.3d 742, 748 (6th Cir. 2002) (cleaned up).  Put another way, a prosecutor violates the Eighth Amendment when his comments are "so prejudicial as to constrain the manner in which the jury [is] able to give effect to mitigating evidence." *Id.* (cleaned up).

Goforth takes issue with five categories of comments the prosecutor made, which the parties discuss at length in their briefs.  [*See* R. 9 at 260-61 (quoting closing argument); R. 42 at 107-113.]  After reviewing the prosecutor's closing argument, the Court concludes none of the comments in question, when considered in context, were so prejudicial that they either influenced the jury's decision between life and death, *see Bates*, 402 F.3d at 641, or prevented the jury from properly considering mitigating evidence.  *See DePew*, 311 F.3d at 748.

First, although Goforth claims the prosecutor made an impermissible "send a message to the community" argument, a full review of the closing statement clarifies that the prosecutor was explaining his own role to the jury, not improperly instructing the jury on its role.  [*See* R. 145 at 175.]  Second, Goforth alleges the prosecutor violated the so-called Golden Rule by improperly

asking the jury to identify with the victim.  However, prosecutors may depict victims as "normal human beings who did not deserve to have their lives ended prematurely or in such a brutal fashion." *Hodge v. Commonwealth*, 17 S.W.3d 824, 852 (2000).  Further, the Kentucky Supreme Court plainly found there was no violation of the Golden Rule on the part of the prosecutor, *see Caudill*, 120 S.W.3d at 675, and Goforth fails to demonstrate that finding was unreasonable.

Third, Goforth claims the prosecutor wrongfully commented upon his lack of remorse, violating his privilege against self-incrimination.  But again, the Kentucky Supreme Court already considered the prosecutor's statements on that point and found the prosecutor made "fair comment on the quality of the evidence for the defense." *Id.* at 676.

Fourth, Goforth contends the prosecutor violated his constitutional rights by referring to a particular quote from United States Supreme Court Justice Potter Stewart's concurrence in *Furman v. Georgia*, 408 U.S. 238, 308 (1972).  Regarding this argument, the Kentucky Supreme Court already concluded as follows:

> Even though Justice Stewart was misquoted, we perceive no fundamental unfairness from this dramatic flourish.  Nor did the remark diminish the jury's sentencing responsibility or shift that responsibility from the jury to Justice Stewart (which seems to be the gist of this aspect of the argument).

*Caudill*, 120 S.W.3d at 677.

Finally, Goforth's argument that the prosecutor denigrated the concept of mitigation is without merit.  During post-conviction proceedings, the Kentucky Supreme Court noted that "[t]he closing argument was limited to fair interpretations of the evidence and of the defendants' testimony and did not contain improper commentary on the concept of mitigation evidence." *See Goforth*, 2009 WL 1110400, at *5.  Ultimately, this Court agrees, and none of the comments in question entitle Goforth to relief under the Due Process Clause or the Eighth Amendment.

33

In turn, Goforth has not demonstrated his attorneys were ineffective for failing to object to the various sentencing comments.  If it was not unreasonable for the Kentucky court to find no prosecutorial misconduct, it was not unreasonable for counsel to let the closing argument proceed without an objection.  *See, e.g., Harrington*, 562 U.S. at 105 (explaining the relevant question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard"); *Bowling v. Commonwealth*, 80 S.W.3d 405, 415 (Ky. 2002).  Therefore, Goforth's claim that his lawyer was ineffective for failing to object to the prosecutor's sentencing comments also fails.

### N.  Claim 21—Ineffective Assistance of Counsel Regarding Mitigation

Goforth also brings a claim for ineffective assistance of counsel based on the mitigation strategy used during his sentencing proceeding. [R. 9 at 278-309.]  Goforth complains that his attorneys did not hire an investigator, failed to use a mitigation specialist, and conducted an impermissibly cursory investigation themselves.  As a result of their flawed mitigation investigation and corresponding strategy, the jury was led to believe that "Goforth had a normal childhood" when in fact he "grew up in extreme poverty, suffered severe emotional abuse as a child, suffered two head injuries, [and] was exposed to a toxic chemical while in prison."  [*Id.* at 279.]

The Kentucky Supreme Court considered and denied Goforth's mitigation-related ineffective assistance claim in its opinion denying state post-conviction relief.  *Goforth*, 2009 WL 1110400, at *6-7.  That said, the Court notes that the claim Goforth presents in his habeas petition differs from that which he presented in post-conviction proceedings.  As the Court previously pointed out in a separate order addressing Goforth's federal request for expert funding, Goforth's post-conviction appellate brief included arguments that his counsel were ineffective for failing to

introduce additional evidence of his family life.  [*See* R. 156 at 4.]  It did not raise counsel's failure to adequately investigate Goforth's head injuries or alleged corresponding intellectual deficits. [*Id.*]  In light of this, the Court's prior order discusses at length the extent to which Claim 21 was properly exhausted or procedurally defaulted.  [*Id.* at 4-9.]  Either way, Goforth has still failed to show any *Strickland* ineffectiveness with respect to his mitigation case.  [*See id.* at 9-11.]

In his habeas petition, Goforth argues at length that his counsel erred in presenting only fifteen minutes of mitigation testimony which mostly portrayed Goforth as hard-working and competent.  It is true that "[a]n unreasonably truncated mitigation investigation is not cured simply because some steps were taken prior to the penalty-phase hearing and because some evidence was placed before the jury."  *Johnson v. Bagley*, 544 F.3d 592, 602 (6th Cir. 2008).  But it is also true that this case does not represent a complete failure to investigate or present mitigating evidence on counsel's part.  *See Caudill*, 881 F.3d at 463 (noting "a complete failure to investigate is different from failing to 'dig deeper'").  And to the extent Goforth claims his counsel's mitigation approach failed to comply with ABA Guidelines [*see* R. 9 at 281], the Supreme Court has made clear that ABA standards are "'only guides' to what reasonableness means, not its definition."  *Bobby v. Van Hook*, 558 U.S. 4, 7-9 (2009) (quoting *Strickland*, 466 U.S. at 688).

Further, as the Court already discussed in the context of Goforth's request for expert funding [*see* R. 156], the mitigating evidence that Goforth now claims should have been introduced could fairly be considered to be in conflict with Goforth's overall defense strategy.  Goforth testified at trial, presenting himself as reasonably intelligent and articulate.  In an effort to show that he lacked a sufficient motive to carry out the crimes against White, his defense also emphasized that he had a well-paying job and did not need money.  Accordingly, it would not be unreasonable to conclude that:

both Goforth's testimony and trial strategy during the guilt phase were inconsistent with any notion that he suffered from the kind of cognitive or intellectual deficits which might have been used to reduce his culpability during the penalty phase. It would not have been unreasonable for Goforth's trial counsel to elect against presenting evidence of head injuries occurring approximately 15 years before the murder during the penalty phase, having just completed a guilt phase which presented Goforth as a man from a good family who had developed trade skills and had earned enough income to meet his needs.

[*Id.* at 10-11.]

Where AEDPA's "double deference" applies, *see Hodge v. Jordan*, 12 F.4th at 643, the Court's role is not to hold counsel to an ideal mitigation strategy or, with the benefit of hindsight, to opine on the propriety or effectiveness of counsel's strategy compared to that which Goforth now wishes had been employed. The Court simply considers whether the Kentucky Supreme Court's evaluation of the matter was a reasonable one. *See Hughbanks v. Hudson*, 2 F.4th 527, 548 (6th Cir. 2021) ("We may not find this argument to be persuasive or correct, but it is not so lacking in justification that no fairminded jurist could find it to be consistent with *Strickland*'s objective standard for reasonable performance."). And even if the Court were to consider *de novo* some or all of the claims now made in Goforth's petition under *Strickland* (such as the arguments regarding his brain injuries not presented during post-conviction proceedings), given the overall context of Goforth's trial and sentencing proceedings, the Court cannot conclude this is the rare case where counsel's strategic decision-making should be supplanted and habeas relief granted. *See, e.g., Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). Accordingly, the Court denies Claim 21.

## O.  Claim 22—Kentucky's Complicity Statute

In Goforth's case and others like it, Kentucky's complicity statute has been used as the basis for a death sentence where the evidence allows a finding that "a non-trigger man['s] participation in the murder is such to render the death penalty appropriate." *Perdue v. Commonwealth*, 916 S.W.2d 148, 166 (Ky. 1995). Goforth did not challenge the constitutionality of this practice at trial or on direct appeal.[7]  Nevertheless, he now claims the complicity statute allows individuals to be sentenced to death in situations for which the death penalty is automatically excessive, thereby violating the Eighth and Fourteenth Amendments.  [R. 9 at 309-14.]

Kentucky's complicity statute reads as follows:

(1)  A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:

    (a)  Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

    (b)  Aids, counsels, or attempts to aid such person in planning or committing the offense; or

    (c)  Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

(2)  When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:

    (a)  Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or

    (b)  Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or

    (c)  Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.

---

[7] In Claim 24, Goforth raises an ineffective assistance of counsel claim for appellate counsel's failure to raise this issue on direct appeal.  [*See* R. 9 at 319-26.]

KRS 502.020.  Under Kentucky law, "one who is found guilty of complicity to a crime occupies the same status as being guilty of the principal offense."  *Wilson v. Commonwealth*, 601 S.W.2d 280, 286 (Ky. 1980).  Murder is a capital offense.  *See* KRS 507.020(2).  Accordingly, complicity to murder is also a capital offense.  *See, e.g., Epperson v. Commonwealth*, 197 S.W.3d 46, 64 (Ky. 2006).  But Goforth claims the language of the complicity statute—specifically, the references in sections (1)(b) and (2)(b) to "attempt[ing] to aid another person in planning" a crime, proscribes behavior that could never rise to the level of death-eligible conduct.

Relying primarily on *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987), Goforth contends that attempting to aid in the planning of a murder fails to provide the sufficient *actus reus* required for a death sentence.  In *Enmund*, the United States Supreme Court found that the death penalty was excessive for a defendant who was waiting in a getaway car near the crime scene, ready to help his codefendants escape after they carried out a robbery and multiple murders.  *See* 458 U.S. at 797.  Conversely, in *Tison*, the Supreme Court upheld the death sentences for defendants who were "actively involved in every element of the kidnapping-robbery and [were] physically present during the entire sequence of criminal activity," which culminated in several murders.  *See* 481 U.S. at 138.  On "the *Enmund-Tison* continuum," Goforth argues, attempting to aid in the planning of a murder under the complicity statute falls "to the left of even *Enmund*."  [R. 9 at 312.]

This argument downplays the *mens rea* involved in *Enmund* and required for a complicity to murder conviction in Kentucky.  In *Enmund*, the Supreme Court vacated the defendant's death sentence because he was not actively involved in the killing *and* because there was no proof that he intended to cause physical harm or death to the victims.  *See* 458 U.S. at 797-801 (finding the Eighth Amendment prohibited putting Enmund to death for "two killings that he did not commit

38

*and had no intention of committing or causing*") (emphasis added).  It is therefore only useful to consider Kentucky's complicity statute on an *Enmund-Tison actus reus* continuum to a point.

In order for a defendant to be convicted for complicity to murder in Kentucky, he must either intend the murder pursuant to KRS 502.020(1), or, pursuant to KRS 502.020(2), act with the level of moral culpability required under the murder statute.  *See* KRS 502.020, Ky. Crime Commission/LRC Commentary (1974).  In other words, the Kentucky complicity statute would not allow a conviction like Enmund's, where the defendant "had no intent to kill and had not even contemplated that a life would be taken," in the first place.  *Grundy v. Commonwealth*, No. 2006-CA-001767-MR, 2008 WL 746424, at *3-4 (Ky. S. Ct. March 21, 2008) (further explaining the differences between Kentucky's statutory scheme and Florida's scheme at issue in *Enmund*).  This squares with *Tison*, where the Supreme Court specifically explained that "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result."  *See Tison,* 481 U.S. at 157-58 (emphasis added).

In the end, Goforth fails to explain why it is unconstitutional for Kentucky to allow capital sentencing for attempting to aid in the planning of a murder when a defendant clearly does so with the requisite level of intent.  And, in any event, even if Caudill, not Goforth, carried out the murder of Lonetta White in this case, the trial evidence allowed the jury to reasonably find that Goforth engaged in criminal activities known to carry a grave risk of death, thus making Goforth's conduct death-eligible under *Tison*.  *See id.*  Claim 22 is therefore unavailing.

### P.  Claim 24—Ineffective Assistance of Direct Appeal Counsel

In Claim 24, Goforth alleges his direct appeal counsel were ineffective for failing to thoroughly raise the allegations he presents now in Claims 18, 19, 22, and 23.  [R. 9 at 319-26.] Goforth contends his direct appeal counsel only challenged some, rather than all, of the prosecutor's improper statements during closing argument under the Due Process Clause.  (Claim 18).  He contends counsel completely failed to mount an Eighth Amendment challenge to the prosecutor's improper statements (Claim 19).  [*See id.* at 319-20.]  And he further alleges that his direct appeal counsel completely failed to address the unconstitutional ambiguities involved with Kentucky's complicity statute (Claim 22) and the combination jury instruction used in his case (Claim 23).

As an initial matter, the Warden argues these claims are all procedurally defaulted because Goforth did not present them in state court prior to raising them now in his federal habeas case. But Goforth contends ineffective assistance of appellate counsel claims were not cognizable in Kentucky at the time of filing and, thus, his failure to previously raise them should be excused.[8] [*See id.* at 319 n. 1133.]  The Sixth Circuit recently considered this exact circumstance and clarified that a petitioner in Goforth's shoes "was not required to make the futile gesture of presenting a claim to state courts that would not recognize the claim."  *Haight*, 2023 WL 1859893, at *13. Thus, the petitioner's failure to present his ineffective assistance of counsel claims in Kentucky post-conviction proceedings did not preclude federal habeas review.  *Id.*

In light of *Haight*, this Court considers Goforth's ineffective assistance of appellate counsel claims *de novo*.  *See id.* at *13-14.  Even so, the claims fail.  "Ineffective assistance of appellate

---

[8] Prior to 2010, ineffective assistance of appellate counsel claims were not cognizable in standard Kentucky post-conviction proceedings.  However, in 2010, the Kentucky Supreme Court reversed its previous precedent and recognized ineffective assistance of counsel claims "premised on appellate counsel's alleged failure to raise a particular issue on direct appeal."  *See Hollon v. Commonwealth*, 334 S.W.3d 431, 436 (Ky. 2010).

counsel claims are governed by the same *Strickland* standard as ineffective assistance of trial counsel." *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009). Accordingly, in order to prevail, Goforth must demonstrate both that appellate counsel's performance was deficient and that his defense was prejudiced. *See Strickland*, 466 U.S. at 686. To establish deficient performance, Goforth must demonstrate that his appellate counsel "made an objectively unreasonable decision by choosing to raise other issues instead of this ineffective assistance of trial counsel issue, meaning that issue 'was clearly stronger than issues that counsel did present.'" *Webb*, 586 F.3d at 399 (quoting *Smith v. Robbins*, 528 U.S. 259, 285, 288 (2000)).

In this case, Goforth's direct appeal counsel raised forty-one issues in a 146-page brief. Though Goforth's post-conviction attorneys plainly believe Claims 18, 19, 22, and 23 are significant issues worth raising, they fail to demonstrate that those issues are clearly stronger than the many others direct appeal counsel did present. The United States Supreme Court has noted that, while not impossible, it is difficult to demonstrate that appellate counsel performed deficiently when numerous other issues were raised in counsel's appellate brief. *Robbins*, 528 U.S. at 288. This is because appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

As this Court has explained above, Claims 18, 19, 22, and 23 are all properly denied. And appellate counsel had no obligation to raise meritless claims, which will never be "clearly stronger" than the other claims counsel did choose to raise. *See Webb*, 586 F.3d at 399. Further, even if Goforth's direct appeal counsel had performed deficiently, Goforth has wholly failed to establish prejudice, which requires him to demonstrate "a reasonable probability that, but for his counsel's

unreasonable failure to raise this issue on appeal, he would have prevailed." *Id.* (cleaned up). Consequently, Goforth is not entitled to relief on this claim.

### Q.  Claims 25, 26, and 27—Proportionality Review

Goforth also alleges various constitutional violations stemming from the proportionality review performed by the Kentucky Supreme Court in his case.  In Claim 25, Goforth contends his Eighth Amendment rights were violated when the Kentucky Supreme Court compared his case only to other cases where the death penalty was imposed and not to cases with lesser sentences. [R. 9 at 327-33.].  And in Claims 26 and 27, Goforth suggests the manner in which Kentucky conducts proportionality reviews violates his rights under the Fourteenth Amendment's Due Process Clause.  [*Id.* at 333-38.]  None of these claims provide a basis for habeas relief.

Pursuant to KRS 532.075, the Kentucky Supreme Court must review all sentences where the death penalty is imposed for a capital offense.  KRS 532.075(1).  In its review, the court must determine:

> (a) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and
>
> (b) Whether the evidence supports the jury's or judge's finding of statutory aggravating circumstances as enumerated in KRS 532.025(2), and
>
> (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

KRS 532.075(3).  The court must also "include in its decision a reference to those similar cases which it took into consideration." KRS 532.075(5).  When conducting the proportionality review in Goforth's case, the Kentucky Supreme Court found the death sentence imposed by the jury was neither excessive nor disproportionate. *Caudill*, 120 S.W.3d at 679.  In doing so, the court compared Goforth's case to "all cases decided since 1970 in which the death penalty was

imposed," with an emphasis on cases involving a murder committed during the course of a burglary, robbery, or both. *Id.*

Goforth first claims that his Eighth Amendment rights were violated when the Kentucky Supreme Court considered only cases where the death penalty was imposed and not cases where, for example, the defendant received a life sentence. [R. 9 at 327-33.] But the Eighth Amendment does not require proportionality review in capital cases at all, *see Pulley v. Harris*, 465 U.S. 37, 43-51 (1984), and the Sixth Circuit has clearly explained that the Kentucky Supreme Court does not need to conduct the broader comparison Goforth desires. *See, e.g., Wheeler v. Simpson*, 852 F.3d 509, 520-21 (6th Cir. 2017); *Getsy v. Mitchell*, 495 F.3d 295, 306 (6th Cir. 2007) (explaining that "states have great latitude in defining the pool of cases used for comparison" and that a court's decision to limit review to other capital cases "falls within this wide latitude").

Goforth's challenges brought under the Fourteenth Amendment fare no better. Goforth argues his due process rights were violated because of the cases the Kentucky Supreme Court considered in its review. [*See* R. 9 at 333-36.] But to the extent KRS 532.075 confers upon him a liberty interest that is protected by the Fourteenth Amendment at all, the "federally protected liberty interest created by that statute, at most, is an interest in having the Kentucky Supreme Court *follow that statute*, which it did." *Thompson v. Parker*, 867 F.3d 641, 653 (6th Cir. 2017) (emphasis in original). "And when it comes to a petitioner's liberty interest in state-created statutory rights, absent some other federally recognized liberty interest, there is no violation of due process as long as Kentucky follows its procedures." *Id.* (cleaned up). Likewise, then, Goforth's Fourteenth Amendment rights were not violated by the Kentucky Supreme Court's failure to disclose the exact data relied upon during the proportionality review. [*See* R. 9 at 336-38]; *see also Hunt v. Commonwealth*, 304 S.W.3d 15, 52-53 (Ky. 2009) (compiling cases rejecting this

claim).  Consistent with state law, the court's decision included "a reference to those similar cases which it took into consideration."  KRS 532.075(5); *Caudill*, 120 S.W.3d at 679.  Nothing further was required.

### R.  Claim 28—Cumulative Error

Finally, Goforth claims that even if none of his individual claims resulted in a violation warranting habeas relief, the cumulative impact of multiple trial errors collectively violated his due process right to a fundamentally fair trial.  [R. 9 at 338-40.]  However, in the Sixth Circuit, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."  *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012).  This argument therefore lacks merit.  And to the extent Goforth argues that the Court should still consider his claim because Sixth Circuit panels have differed on the point [*see* R. 9 at 339], this Court concludes—just as the Kentucky Supreme Court held—that there have been no errors to accumulate.  *See Caudill*, 120 S.W.3d at 679.  All in all, Goforth has presented no grounds warranting the reversal or remand of either his conviction or sentence.  His habeas petition will therefore be denied.

### IV.  CONCLUSION

For the foregoing reasons, Goforth's various habeas claims are without merit.  Goforth has also failed to demonstrate the propriety of any additional discovery or evidentiary hearing, as the state court decisions at issue do not contravene or unreasonably apply clearly established federal law or involve an unreasonable determination of the facts pursuant to § 2254(d).  [*See, e.g.*, R. 156 at 15-25 (citing and discussing *Pinholster*, 563 U.S. 170).]  The only remaining matter, then, is whether the Court should issue a certificate of appealability with respect to any of Goforth's claims.

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and, if it does issue a certificate, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The statute then provides that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner may meet this standard by showing that reasonable jurists could debate whether the petition should have been determined in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (cleaned up).

Applying this standard, the Court concludes that Goforth has not made a substantial showing of the denial of a constitutional right. Indeed, Goforth has neither demonstrated that reasonable jurists could debate whether the petition should have been resolved differently nor established that the various issues deserve encouragement to proceed further. Thus, the Court will deny Goforth a certificate of appealability.

Accordingly, it is hereby **ORDERED** as follows:

1.  Jonathan Wayne Goforth's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [R. 9] is **DENIED WITH PREJUDICE**;

2.  This action is **DISMISSED** and **STRICKEN** from the Court's docket;

3.  With respect to any appeal, a certificate of appealability is **DENIED**; and

4.  The Court will enter a corresponding Judgment.

Dated:  March 27, 2023.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY